UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRENDA J. LUMSDEN,

Plaintiff,

v.

FOSTER FARMS, LLC,

Defendant.

Case No. C07-5099RJB

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING CASE

This matter comes before the court on Defendant's Motion for Summary Judgment (Dkt. 24) and on plaintiff's request that the court continue all deadlines in the case (Dk. 31). The court has considered the pleadings filed in support of and in opposition to the motion and the file herein.

PROCEDURAL AND FACTUAL BACKGROUND

On January 31, 2007, plaintiff Brenda Lumsden, through counsel, filed a civil action in Cowlitz County Superior Court, against defendant Foster Farms, LLC, alleging state law claims for wrongful retaliatory discharge and violation of public policy. Dkt. 1-4. The complaint alleges (1) that sometime in 2003, plaintiff loaned money to a Foster Farms' employee that she supervised, and that there was no company policy regarding the loaning of money between employees; (2) that, from April through June of 2005, the U.S. Department of Agriculture was threatening to shut down the plant; plant management and maintenance, in order to avoid shutdown of the plant, added chlorine dioxide to the

chlorine already being used without providing for adequate ventilation; and the added chlorine dioxide caused numerous employees to complaint of physical symptoms related to the high level of chlorine; (3) that plaintiff complained to management about the physical symptoms suffered by her co-workers and herself due to the high level of chlorine dioxide; (4) that on May 27, 205, she was terminated based upon the loan she had made to a co-worker two years earlier; and (5) that the termination was pretextual in that defendant was attempting to prevent her complaint about chlorine dioxide and chlorine levels and the physical symptoms experienced by her co-workers. Dkt. 1-4.

On March 2, 2007, defendant removed this case to federal court, on the basis of diversity of citizenship under 28 U.S.C. § 1332. Dkt. 1.

On May 31, 2007, the court issued a scheduling order. Dkt. 11. That order directed that discovery was to be completed by November 26, 2007. *Id.*

On October 11, 2007, plaintiff's counsel filed a motion to withdraw as counsel. Dkt. On October 23, 2007, the court issued an order granting plaintiff's counsel's motion to withdraw. Dkt. 20. On November 19, 2007, following a stipulation of defendant and plaintiff, who was then proceeding pro se, the court entered an order (1) extending the deadline for completion of discovery, with the exception of discovery of experts, to December 14, 2007; (2) confirming that the deadline for disclosure of rebuttal expert testimony was December 12, 2007; (3) confirming that the discovery cutoff with regard to depositions of expert witnesses was January 14, 2008; and (4) extending the deadline for dispositive motions to January 9, 2008. Dkt. 23.

On December 27, 2007, defendant filed a motion for summary judgment, contending that (1) plaintiff cannot state a claim that defendant terminated her in violation of public policy; and (2) Washington does not recognize a general cause of action for wrongful termination. Dkt. 24. The motion was noted for consideration on January 18, 2008, pursuant to Local Rule CR 7. On January 15, 2008, defendant filed a reply, noting that plaintiff had not filed a response to the motion for summary judgment. Dkt. 29. On January 28, 2008, the court issued an order notifying plaintiff of the requirements to respond to a motion for summary judgment and renoting the motion for summary judgment for consideration on February 8, 2008. Dkt. 30.

On January 29, 2008, the court received a letter from plaintiff, requesting that the court extend

all deadlines in this case because of misunderstandings related to her attorney and because she did not realize the difficulty in obtaining new counsel. Dkt. 31. The court deemed this letter a motion to continue and noted the motion for consideration on February 8, 2008. Dkt. 38.

On February 15, 2008, plaintiff filed documents with the court. Dkt. 35.

RELEVANT FACTS

Plaintiff began her employment with defendant in July of 1998. In March or April of 2005, Maria Garcia, defendant's employee relations manager, met with Frank Panarra, defendant's human resources manager, and Russell Spaulding, plaintiff's superintendent, and advised them that plaintiff had borrowed money from a subordinate. Dkt. 25, at 2. Defendant had a conflict of interest policy, dated November 1, 2003, but it is unclear whether plaintiff received a copy of that policy, since she was provided with company policies on July 7, 1998. See Dkt. 25, Exh. A and B.

In a declaration, Ms. Garcia stated that, in September of 2004, plaintiff solicited and received an interest free loan of $300 from a direct subordinate; that, in March of 2005, plaintiff borrowed another $250 from the same employee; that plaintiff told the employee she did not want anyone to know that she had borrowed the money; that Ms. Garcia learned of these loans in May of 2005 when the employee's husband approached Ms. Garcia's support person, who in turn reported it to Ms. Garcia; that Ms. Garcia met with the employee and confirmed that plaintiff had twice requested that the employee loan her money; and that the employee told Ms. Garcia that she was uncomfortable asking plaintiff to repay the money because she feared losing her job. Dkt. 26, at 1-2. Ms. Garcia further stated that she confronted plaintiff, who admitted to having twice borrowed money from the employee; that she told plaintiff that such conduct created a conflict of interest and should not be done; and that plaintiff acknowledged that she knew borrowing money from subordinate employees was wrong. Dkt. 26, at 2. Ms. Garcia stated that she suspended plaintiff with pay pending the company's determination of the appropriate response. Id. Ms. Garcia stated that she met with Mr. Panarra and with plaintiff's two shift superintendents, and advised them of plaintiff's having borrowed money from a subordinate. *Id.* Ms. Garcia stated that they agreed that the incident of borrowing money from a subordinate was grounds for termination. *Id.* Ms. Garcia stated that, on May 25, 2005, she told plaintiff that she was being terminated for creating a conflict of interest by borrowing money

from a subordinate co-worker and creating an intimidating work environment for the subordinate. *Id.*

Plaintiff apparently disputes the circumstances surrounding the loan. In documents she submitted to the court on February 14, 2008, which she had apparently provided to defendant by e-mail on February 4, 2008, in response to defendant's request for admissions, plaintiff stated that she had incurred a debt because of actions of the employee and her husband; that the employee felt guilty and wanted to help pay the bill; and that the employee finally agreed to consider the money she gave to plaintiff to be a loan. Dkt. 35, at 2. Plaintiff stated that this loan was made in November of 2003. Dkt. 35, at 3.

In her complaint, plaintiff contends that the loan was a pretext for terminating her. The complaint alleges that she was terminated for complaining about the high levels of chlorine dioxide. Human Resources Manager Frank Panarra (Dkt. 25), Employee Relations Manager Maria Garcia (Dkt. 26) and Safety Manager David McNiel (Dkt. 27) all denied that plaintiff complained to them about chloride or other chemicals. Plaintiff stated in her response to defendant's request for admissions, filed with the court on February 14, 2008, that she never complained to Human Relations about the situation. Dkt. 35, at 2, #15. In those responses, however, she stated as follows:

> I notified many people. I notified Medical Services on many occasions which resulted in numerous calls to Dave McNiel. At one point, he even left his home and came to the plant. Several hourly employees also complained to Medical Services (Jeanette Davis, Bren Rhodes, Rob Hendrickson, and Jim Heinz), resulting in removing employees from the rehang work area to reduce exposure. This was done with the advise [sic] of Medical Services, Plant Superintendents and Davie McNiel. Other people who were aware are Don Easely, Anthony Melo, Frank Panarra, Pat Voth, and Ashland Chemical representatives.

Dkt. 35, at 2, #14.

In the February 14, 2008 documents she filed with the court, plaintiff provided checklists that she had apparently completed, after being assigned to do so, apparently for testing chemical levels. Dkt. 35, at 9, 10, and 12.

SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element

of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

### 1. Motion for Summary Judgment

**Procedural Issues**. As a threshold matter, the court should address the procedural issues in this case. Plaintiff was granted an extension of time to complete discovery, after her attorney had withdrawn. She did not comply with the deadline for responding to defendant's request for admissions. At the latest, she was required to have responded to these requests by December 14, 2007; her responsive e-mail was sent to defendant's counsel on February 4, 2008, long after the discovery deadline had passed. Further, plaintiff did not file a timely response to defendant's motion for summary judgment, even after the court had renoted that motion and informed plaintiff of the requirements for

responding to a motion for summary judgment. Finally, the documents plaintiff filed on February 14, 2008 (Dkt. 35), do not comply with the requirements for responding to a motion for summary judgment.

District courts may dismiss a case for failure to comply with pretrial procedures mandated by local rules and court orders. *Thompson v. Housing Auth. of City of Los Angeles,* 782 F.2d 829, 831 (9th Cir.), *cert. denied* , 479 U.S. 829 (1986). The court must consider the public's interest in expeditious resolution of litigation, the court's need to manage its docket, the risk of prejudice to the defendants, public policy favoring disposition of cases on their merits, and the availability of less drastic sanctions. *Id.* This case was filed more than a year ago. The public has an interest in expeditious resolution of cases. The court extended deadlines in this case to accommodate plaintiff, after her attorney withdrew. Further, the court renoted the motion for summary judgment and notified plaintiff of the requirements for responding to a motion for summary judgment. The risk of prejudice to defendant is significant. Defendant has an interest in reasonably prompt resolution of the claims made against it. It is unfair to defendant to be required to defend a suit when the plaintiff fails to prosecute the case in compliance with the rules. While public policy favors disposition on the merits, the court has an interest in managing the docket toward fair and expeditious resolution of the cases assigned to the court. In light of plaintiff's pro se status, the court has given her every consideration by extending deadlines, delaying the motion for summary judgment, and notifying her of the requirements to respond to the motion for summary judgment. Plaintiff had until this date to obtain the services of an attorney, but no attorney has appeared on her behalf. Finally, there do not appear to be less drastic sanctions available. The court should grant defendant's motion for summary judgment and dismiss the case for failure to comply with the federal and local rules of civil procedure and with the orders of this court.

**Merits of Plaintiff's Claims**.. In the alternative, in light of plaintiff's *pro se* status, the court has reviewed the merits of her claims. Because plaintiff is at this point proceeding *pro se*, the court has construed the pleadings liberally and has afforded plaintiff the benefit of any doubt. *See Karim-Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 623 (9th Cir.1988). The court has carefully reviewed all documents plaintiff filed in her brief, and has construed all documents, including the facts set forth in the Relevant Facts section above, in her favor, even though those documents were not signed under

oath and did not otherwise comply with the requirements of Fed.R.Civ.P. 56..

1. *Wrongful Retaliatory Discharge*. Plaintiff claims that she was wrongfully terminated in retaliation for complaining about high levels of chlorine dioxide.

Generally, absent a contract requiring cause for termination, employment relationships in Washington are at-will by either employer or employee. *Selix v. Boeing Co., 82 Wn.App.* 736, 740, 919 P.2d 620 (1996). Under the at-will doctrine, an employer can, with limited exceptions, discharge an employee with immunity from suit. *Bakotich v. Swanson*, 91 Wn.App. 311, 314-15 (1998)). In this case, plaintiff has not shown that she has a cause of action under state law for wrongful discharge. Plaintiff has not shown that she was anything other than an at-will employee. Accordingly, defendant's motion for summary judgment should be granted, and the claim for wrongful retaliatory discharge should be dismissed, unless the public policy exception to the at-well doctrine, as discussed below, applies.

2. *Termination in Violation of Public Policy*. Plaintiff contends that the reason given for her termination, the loan(s) from a subordinate, was a pretext, and that she was actually terminated for complaining about high chlorine dioxide levels.

One of the narrow exceptions to the at-will rule is for a violation of public policy. *Wilmot v. Kaiser Aluminum and Chem. Corp.*, 118 Wn.2d 46, 53, 821 P.2d 18 (1991) (citing *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 232 (1984)).

The public policy exception provides relief for an employee whose discharge contravenes a clear mandate of public policy. *Thompson*, 102 Wn.2d at 232. To prevail on a wrongful discharge claim in an at-will employment situation, a plaintiff must prove (1) the existence of an employer/employee relationship between the parties; (2) the existence of a clear public policy; (3) that discouraging the conduct in which plaintiff engaged would jeopardize the public policy; (4) that the public-policy linked conduct caused the discharge; and (5) the absence of an overriding justification for the discharge. *Hubbard v. Spokane County*, 146 Wn.2d 699 (2002); *Gardner v. Loomis Armored, In.*, 128 Wn.2d 931, 941-42 (1996).

The plaintiff has the burden of establishing the existence of a clear mandate of public policy. *Bakotich v. Swanson*, 91 Wn.App. 314-15 (1998)). The public policy must be judicially or legislatively

created. *Thompson*, 102 Wn.2d at 232. The public policy exception has generally been recognized in four different situations: where an employee is fired (1) for refusing to commit an illegal act; (2) for performing a public duty or obligation; (3) for exercising a legal right or privilege; and (4) in retaliation for reporting employer misconduct. *Dicomes v. State*, 113 Wash.2d 612, 618, 782 P.2d 1002 (1989).

In this case, construing the facts in the light most favorable to plaintiff, it appears that she was assigned to complete checklists on chemical levels on two occasions; that she complained to medical services about the chemical levels; that medical services complained to safety manager David McNiel; that several hourly employees complained to medical services; and that employees were removed from the rehang work area as a result of advice from medical services.

Plaintiff has shown that there was employer-employee relationship. She has not shown that there was a clear public policy, or that discouraging the conduct in which she was engaged would jeopardize that public policy. Even if there were a clear public policy, arguably that employees should be able to inform their employers that there is a health risk present, plaintiff has not shown that the public policy-linked conduct caused her dismissal. She was assigned to complete the chemical checklists, not discouraged or prohibited from doing so. *See Tyner v. State*, 137 Wn.App. 545, 557-58 (2007)(speech that occurs during the discharge of an employee's duties likely does not touch on matters of public concern), quoting *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1960 (2006)("when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). Further, according to plaintiff, she and many other employees complained to medical services about the high levels of chlorine dioxide, but plaintiff has not shown that the other employees were terminated after they complained to medical services. Finally, plaintiff does not contest that a subordinate loaned her money, even though she contests some of the circumstances surrounding that loan. Plaintiff has not met her burden to show that there are outstanding issues of material fact that preclude summary judgment in favor of defendant on the claim of wrongful discharge in violation of public policy. This claim should be dismissed.

**2. Request for Extension of Deadlines.** Plaintiff has requested that the court extend all the deadlines in this case. She contends that she was led to believe by her attorney that he had completed

more than he had and that he had filed with the court papers she had given him. In addition, she argues that it has been difficult to locate an attorney to represent her.

As discussed above, the court extended deadlines in order to assist plaintiff, after the withdrawal of her attorney. The court notified plaintiff of the requirements for responding to the motion for summary judgment. The court considered the documents plaintiff filed in response to defendant's motion for summary judgment and construed them in her favor, even though those documents did not comply with the requirements. Plaintiff had months to attempt to locate an attorney. Plaintiff has not shown that or how a further extension of time would assist her in either prosecuting the case or obtaining counsel. Finally, as noted above, defendant has an interest in reasonably prompt resolution of the claims against it. The court should deny plaintiff's request for an extension of time.

Therefore, it is hereby

**ORDERED** that plaintiff's request that the court continue all deadlines in the case (Dk. 31) is **DENIED**. Defendant's Motion for Summary Judgment (Dkt. 24) is **GRANTED**. This case is **DISMISSED WITH PREJUDICE.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 21st day of February, 2008.

ROBERT J. BRYAN
United States District Judge